NORRED LAW, PLLC
Clayton L. Everett, Texas State Bar No. 24065212
515 E. Border St. | Arlington, Texas 76010
Phone: (817) 704-3984 | clayton@norredlaw.com
Attorney for Tammy Dobbs

# United States Bankruptcy Court
### Northern District of Texas
### Fort Worth Division

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 17-40255-RFN-13 |
| Tammy Renea Dobbs, | § | CHAPTER 13 |
| | § | |
| Debtor(s). | § | |
| Tammy Renea Dobbs, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 17-04109 |
| | § | |
| Landmark Bank, N.A., and Isaac Bates, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S AMENDED COMPLAINT AGAINST
## LANDMARK BANK, N.A., AND ISAAC BATES

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Tammy Renea Dobbs, Debtor and Plaintiff in the above entitled and numbered cause (hereinafter referred to as "Plaintiff") and files this her Amended Complaint Against Landmark Bank, N.A., and Isaac Bates (hereinafter referred to as "Complaint") complaining of Landmark Bank, N.A. (hereinafter referred to as "Landmark") and Isaac Bates (hereinafter referred to as "Bates"), and in support of which would respectfully show the Court as follows:

1.      This Complaint arises in and relates to the Chapter 13 case of Tammy Renea Dobbs bearing case number 17-40255-RFN-13, which was pending in this district at the time of the

events herein described occurred. That Chapter 13 case was subsequently dismissed. However, Tammy Renea Dobbs is currently a debtor under Chapter 13 case number 17-44136-MXM.

2.       Plaintiff can be served by and through her attorney of record, Warren Norred at the following address: Norred Law, PLLC, 515 E. Border St., Arlington, Texas 76010.

3.       Defendant Landmark can be served by and through its Registered Agent for service of process, Wayne Cabaniss, at the following address: 2820 West FM Road 120, Denison, Texas 75020, or by and through its counsel Jeffrey R. Seckel, McGuire, Craddock, Strother, PC: 2501 North Harwood, Suite 1800, Dallas, Texas 75201.

4.       Defendant Bates can be served at his place of employment at the following address: Grayson County Sheriff's Office, Grayson County Justice Center, 200 S. Crockett, Sherman, Texas 75090, or by his counsel James C. Tidwell, Wolfe, Tidwell & McCoy, LLP: 320 North Travis Street, Suite 205, Sherman, Texas 75090.

<u>STATEMENT OF FACTS</u>

5.       On January 25, 2017, Plaintiff filed a voluntary petition under Chapter 13 of Title 11 of the United States Bankruptcy Code. A true and correct copy of Plaintiff's Voluntary Petition is attached hereto as Exhibit A and incorporated herein by reference.

6.       On or about January 25, 2017, Plaintiff filed her Chapter 13 Plan and served a copy on Landmark. A true and correct copy of that communication is attached hereto as Exhibit B and incorporated herein by reference.

7.       On or about January 25, 2017, Plaintiff notified Todd Booher, Constable for Grayson County, of her bankruptcy filing. On information and belief, Constable Booher was attempting to serve a writ of sequestration on the Plaintiff at the time of filing.

8.      On or about January 25, 2017, Defendant Landmark, made a report to Isaac Bates (hereinafter referred to as "Bates") an employee of Watt's Grayson County Sheriff's office accusing Plaintiff of committing the offense of "hindering a secured creditor." The report made by Landmark was without just cause. In the report, Landmark complained that Plaintiff had not released her property to Landmark. However, because Landmark knew Plaintiff had filed a Chapter 13 bankruptcy case, Landmark also knew that Plaintiff had no legal duty to release her property and that Landmark was legally stayed from collecting against Plaintiff's property. Defendant Landmark's complaint to Bates consisted of nothing more than collection actions that were stayed by Plaintiff's Chapter 13 filing.

9.      On or about January 28,2017, the Bankruptcy Noticing Center mailed the Notice of Meeting of Creditors Pursuant to 11 U.S.C. § 341 advising Landmark of Plaintiff's filing and the applicability of the automatic stay pursuant to 11 U.S.C. § 362(a). A true and correct copy of the notice is attached hereto as Exhibit C and incorporated herein by reference.

10.     On or about January 28, 2017, Plaintiff served a copy of her Motion to Extend Automatic Stay on Landmark.   A true and correct copy of the motion is attached hereto as Exhibit

D and incorporated herein by reference.

11. On or about January 28, 2017, Plaintiff served a copy of her Notice of Hearing regarding Motion to Extend Automatic Stay on Landmark. A true and correct copy of the notice is attached hereto as Exhibit E and incorporated herein by reference.

12. On or about February 14, 2017, Defendant Landmark filed its Objection to Debtor's Motion to Extend Stay. A true and correct copy of the objection is attached hereto as Exhibit F and incorporated herein by reference.

13. On or about February 14, 2017, Counsel for Defendant Landmark filed its Notice of Appearance. A true and correct copy of the notice is attached hereto as Exhibit G and incorporated herein by reference.

14. Plaintiff had a pre-petition loan with Landmark which was executed on or about June 26, 2015, bearing Loan Number xxxxx0196 (hereinafter referred to as "the loan"), which was secured on its face by the following collateral (collectively referred to as "the collateral"): 2006 GMC 4500 Pickup (VIN# 1GDE4E12XF432197) and 2000 Sundowner Four Horse Trailer (VIN# 13SZA3423Y1ZA0368). Landmark filed a Proof of Claim for this loan on or about February 16, 2017. A true and correct copy of Landmark's Proof of Claim is attached hereto as Exhibit H and incorporated herein by reference.

15. On or about February 16, 2017, Defendant Landmark filed its Witness & Exhibit List. A true and correct copy of the list is attached hereto as Exhibit I and incorporated herein by reference.

16. On or about February 16, 2017, Defendant Landmark filed its Amended Witness & Exhibit List. A true and correct copy of the list is attached hereto as Exhibit J and incorporated

herein by reference.

17. On or about February 22, 2017, a hearing on Plaintiff's Motion to Extend the Automatic Stay was conducted by the Court. Defendant Landmark, through its attorneys of record, negotiated an agreement that allowed the stay to continue subject to conditions; however, Landmark orchestrated the default of the Plaintiff in fulfilling the terms of that order by failing or refusing to update, correct or withdraw the information and complaint it initiated with Bates violating the implied covenant of good faith and fair dealing. A true and correct copy of the Agreed Order is attached hereto as Exhibit K and incorporated herein by reference.

18. Despite knowledge of Plaintiff's current bankruptcy filing, Defendant Landmark failed or refused to update, correct or withdraw the information and complaint it initiated with Bates.

19. Based solely on Defendant Landmark's complaint, Bates initiated a complaint and probable cause affidavit falsely accusing Plaintiff of committing the felony criminal offense of "Hindering a Secured Creditor" under Texas Penal Code § 32.33. The criminal complaint requested the arrest of Plaintiff even though the facts stated in the affidavit clearly do not support the elements of the that offense as a matter of law. A true and correct copy of the Complaint is attached hereto as Exhibit L and incorporated herein by reference.

20. Bates used this facially defective complaint to cause a wholly unlawful felony arrest warrant to be issued by the Honorable Rita G. Noel of the Justice Court for Grayson County, Texas. A true and correct copy of the Felony Arrest Warrant is attached hereto as Exhibit M and incorporated herein by reference.

21. Bates sought out Judge Noel because she was not an attorney and used to be employed by same Sheriff's office that employs Bates. She neither presides in the first precinct of the count nor in

the precinct in which the Plaintiff lives. Bates sought out Judge Noel because she would give him the best chance of obtaining a warrant despite the obvious and legally defective contents of his complaint. A true and correct copy of a local news article giving Judge Noel's qualifications for office is attached hereto as Exhibit N and incorporated herein by reference.

22.     Despite actual knowledge of and participation in her bankruptcy case, the Plaintiff was arrested on March 2, 2017 as a direct result of Landmark and Bates actions and omissions for the false accusations of committing the felony charge of Hindering Secured Creditors - $30,000 < $150,000 on January 25, 2017.

23.     At the time of her arrest, Plaintiff was in her barn caring for her animals, and upon seeing at least two plain clothes and four uniformed officers coming over her gate, she immediately called Allmand Law Firm, PLLC to find out why they were there to take her possessions. Allmand Law Firm, PLLC contacted the Grayson County Sheriff's office and was advised that the officers were not there to repossess anything, but the Grayson County Sheriff's office refused to tell Allmand Law Firm, PLLC why they were there at Plaintiff's residence. This refusal deprived Allmand Law Firm, PLLC of the opportunity to advise the Grayson County Sheriff's office of Plaintiff's bankruptcy filing. Allmand Law Firm, PLLC then instructed her to talk to the officers.

24.     Bates told her they were there to arrest her and that is what she got "for not paying your damn bills." Bates also told her, "We are taking everything you have." The Plaintiff advised Bates that she was in bankruptcy, and was on her phone with her attorney and he could confirm that with them. Bates grabbed her phone from her and threw it on the concrete floor of the barn destroying the phone and potential evidence it may contain. Bates then threw the 5'4", 118 lb., 58

year old Plaintiff to the ground causing damage to Plaintiff's shoulder and knee as well as several additional minor injuries.

25.     Plaintiff again advised Bates that she was in bankruptcy and told Bates that she had just been to her creditors meeting the day before and her documentation was still in her vehicle to prove that she was in bankruptcy. Bates informed Plaintiff that he had already searched her vehicle and refused to allow her to retrieve the documentation, refused to get or review the documentation himself, and told Plaintiff that she was lying because the banker at Landmark had told him that her case had failed.

26.     Plaintiff continually tried to explain that she had filed a new case and pleaded with Bates to check her paperwork or call her attorney's office, but Bates refused. Bates told her that "Wreckers are coming to take all your stuff, and I'm going through your house when you're not here, and I will find something."

27.     Before Plaintiff was taken from the property, Bates threatened Plaintiff that "If I ever see you with the truck and trailer on the road, I will stop you, arrest you, and take them." Since then, Plaintiff has been afraid to use her truck and trailer.

28.     Plaintiff was confined in jail March 2 and March 3, 2017, against her will and wholly without cause. Plaintiff bonded out on March 3, 2017 at a cost of $8,175 in money and property.

29.     On March 4, 2017, Plaintiff, after being released from her illegal incarceration, she was awoke at approximately 9 a.m. to an officer crawling through the bedroom window across the hall from where she had been sleeping. She met the officer, later identified as Robert Williams, who had his weapon drawn in her hallway. When she asked what he was doing the officer said

"You're not supposed to be here. You are supposed to still be in jail."

30.     Plaintiff would show the Court that this Complaint does not state an offense pursuant to Texas Penal Code § 32.33[1]. The Texas Court of Criminal Appeals, the highest court in the State of Texas with criminal jurisdiction, established over three decades ago that the mere refusal to deliver property upon demand does not constitute "concealing." *Anzaldua v. State*, 696 S.W.2d 911(Tex. Crim. App. 1985); Attorney General's Opinion H-980 (1977). Also, the refusal to voluntarily deliver the property to a creditor does not constitute harming or reducing the property's value and is not a violation of § 32.33. *Cravey v. State*, 980 S.W.2d 545, 546 (Tex. App.- Beaumont 1998). The clause "otherwise harms or reduces the value of the property" implies that aforementioned acts, destroys, removes, conceals, etc., also harm or reduce such value; certainly the mere refusal to deliver property generally would not harm or reduce its value. *Anzaldua v. State*, 696 S.W.2d 911 (Tex. Crim. App. 1985); Attorney General's Opinion H-980 (1977). Likewise, an unintentional partial damaging of the collateral does not constitute a violation of § 32.33. *Cravey v. State*, 980 S.W.2d at 546. This complaint does not even allege that the Plaintiff in any way harmed or damaged the property or its value. In fact, the complaint specifically indicates that the property could be seen, was at Plaintiff's residence, in an open carport. The criminal charges asserted are, therefore, without merit and groundless.

31.     At the time of Plaintiff's filing, she supplemented her income from her  ranch

---

[1]Texas Penal Code § 32.33. Hindering Secured Creditors.
....
(b) A person who has signed a security agreement creating a security interest in property or a mortgage or deed of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property. ...

working as an anesthesia assistant. This income was reported as part of the income shown on the attachment for line 8a of Schedule I. In her duties as an anesthesia assistant, she is required to handle and administer narcotics. As a direct result of the actions and omissions of Defendants in orchestrating her arrest on a felony charge, she is no longer employable as an anesthesia assistant depriving her part time of $3,775.00 per month of income beginning in March 2017 and every month thereafter; however, once her daughter finished with chemotherapy, Plaintiff's earning potential would have increased to as much as $16,000.00 or more per month working full time.

32.     As a direct result of the actions and omissions of Defendants, Plaintiff has suffered severe emotional distress having difficulty sleeping, not feeling safe in her own home.

33.     On March 6, 2017, Defendant Landmark's attorney emailed the undersigned Counsel and, in an attempt to deprive Plaintiff of access to the judicial process in this Court, threatened to pursue sanctions if Plaintiff's Counsel continued to pursue the instant course of action in filing this adversary seeking compensation, damages, punitive damages and injunctive relief against Landmark.  A true and correct copy of the email is attached hereto as Exhibit N and incorporated herein by reference.

34.     Even if this indictment does state an actionable offense, this Texas criminal statute operates as a *de facto* debt collection statute as applied to the debtor; the statute in this context is merely a subterfuge for debt collection and to bypass the Bankruptcy Code. In fact, as applied in the context of this case, this criminal statute stands in direct and irreconcilable conflict with the express terms of the Bankruptcy Code, *i.e.*, 11 U.S.C. §§ 362, 502, 506, 522, 1322, 1325 and 1327.

35.     In this matter, there was never any true, independent investigation by the county Sheriff's office or the District Attorney's office.   Both offices merely rubber stamped the wishes

of Landmark. This is evidenced by Bates' affidavit making the absurd allegation that Plaintiff attempted to "conceal" her vehicle by hiding it in plain sight in her open carport. This ridiculous allegation if accepted would make every Debtor, relying on the Bankruptcy Code to protect their vehicle, a felon merely for keeping the vehicle in their garage.

36.     Therefore, the efforts of the Defendants have served merely to harass Plaintiff unlawfully.

37.     The efforts of Defendants have sought to preclude Plaintiff from asserting any rights under federal law to this Court. The actions of Defendants have deprived Plaintiff of several rights afforded her under Constitutional and federal law including, but not limited to, the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized, right of a debtor to retain property by paying the value thereof, the right of a Debtor to reorganize one's debts, Plaintiff's right to be free from bad faith prosecutions, a debtor's right to be free from harassment by creditors and their agents, and a debtor's right to pursue the production of income free from interference from creditors and their agents.

38.     To allow these criminal proceedings to go forward will wholly frustrate the provisions of the Bankruptcy Code, and judgments and jurisdiction of the Bankruptcy Court.

39.     Plaintiff has been damaged by the unlawful actions of Defendants in the following respects:

        a.      by her incarceration for a total of two (2) days and inherent deprivation of her personal liberty;

b.      by incurring bail bond fees in the amount of $8,175.00;

c.      by having an unwarranted arrest record;

d.      severe emotional distress;

e.      personal injury, pain and suffering for injuries to Plaintiff's knee and shoulder, including the cost of corrective surgery in the approximate amounts of $23,000 and $47,000 respectively.

f.      erroneous felony arrest resulted in loss of license as a certified anesthesiologist assistant;

g.      loss of wages in the minimum amount of $3,775.00 per month through July 2017 and $16,300.00 per month thereafter;

h.      loss of business opportunities and income in the minimum amount of $5,500.00 per month;

i.      punitive damages; and

j.      attorney fees incurred this matter.


## POINTS OF AUTHORITY

40.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §157(c)(3) and 1334, 11 U.S.C. §362(a), (h), and 11 U.S.C. §105(a).

41.     A federal lawsuit to stop a prosecution in a state court is a serious matter. *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).

### ANTI-INJUNCTION ACT, 28 U.S.C. § 2283

42.     The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly

43.     The Bankruptcy Code contains three (3) statutes which provide injunctive relief:

(1) the automatic stay, 11 U.S.C. §362(a); (2) the discharge injunction[2], 11 U.S.C. §524(a);

and(3) the Power of Court provision, 11 U.S.C. §105(a). The automatic stay and discharge

injunctions are more than mere "express authorizations by Act of Congress;" they are, in fact,

congressionally mandated injunctions in themselves.    The power of court provision of 11

U.S.C.§105(a) is used independently to grant injunctions and as a means to enforce the

provisions of the automatic stay and discharge injunctions. Bankruptcy Code § 105 (11 U.S.C. §

105) is an "expressly authorized" exception to the Anti- Injunction Act, so an injunction issued

pursuant to § 105 satisfies the Anti-Injunction Act.    *In re Fussell*, 928 F.2d 712, 716 (5th Cir.

1991).

## VIOLATION OF AUTOMATIC STAY, 11 U.S.C. §362(a)

44.     The automatic stay is a broad injunction that stays "the commencement or

continuation ... of a judicial, administrative, or other action or proceeding against the debtor that

was or could have been commenced before the commencement of the case under this title, or to

recover a claim against the debtor that arose before the commencement of the case under this title."

11 U.S.C. § 362(a)(1).    *In re Dunbar*, 245 F.3d 1058 (9th Cir. 2001).

45.     11 U.S.C. § 362(a) also operates as a stay of "any act to obtain possession of

property of the estate or of property from the estate or to exercise control over property of the

estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the

commencement of the case under this title."    11 U.S.C. § 362(a)(3),(6).

---

[2]Since no discharge has yet been granted in this case, this provision is not implicated at
this time.

46.     The automatic stay prohibits any act to collect, assess or recover prepetition claims against the debtor.  11 U.S.C. § 362(a).  The stay ensures that all claims against the debtor will be brought in a single forum, the Bankruptcy Court. It also protects the debtor by allowing the debtor breathing space. It also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others. *In re Emberton*, 263 B.R. 817 (Bankr. W.D. Ky. 2001); *In re Johnson,* 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000).

47.     The automatic stay is an injunction imposed by Congress pursuant to its enumerated powers[3]. United States Constitution, Article I, Section 8, Clause 4. By this authority, the specific provisions of the Federal Bankruptcy Code enjoy supremacy over the laws adopted by the States[4]. United States Constitution, Article VI.

48.     The stay springs into being immediately upon the filing of a bankruptcy petition: "because the automatic stay is exactly what the names implies - "automatic" - it operates without the necessity for judicial intervention". *Sunshine Dev. Inc. v. FDIC*, 33 F.3d 106, 113 (lst Cir. 1994).

49.     The automatic stay of section 362(a) of the Bankruptcy Code becomes effective upon the commencement of Debtor's case regardless of notice. *In re Freemyer Industrial Pressure, Inc.*, 281 B.R. 262, 266 (Bankr. N.D. Tex., 2002); and See 3 COLLIER ON BANKRUPTCY ¶

---

[3]United States Constitution, Article I, Section 8, Clause 4 provides: The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankrupties throughout the United States; ...

[4]The Supremacy Clause of the United States Constitution, Article VI provides in pertinent part: "... This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; ... ."

362.02 (15th ed. rev.2002)("The stay is effective automatically upon the filing of a bankruptcy petition..."); 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D ¶ 36:4(1997)("The automatic stay provided by § 362 is self-executing and is effective upon the filing of a voluntary or involuntary case..."); *Elbar Investments, Inc., v. Pierce,* 272 B.R. 198, 203 (Bankr.S.D.Tex.2001)("The stay is effective upon the filing of the case, regardless of notice."); *In re Tom Powell & Son, Inc.,* 22 B.R. 657, (Bankr.W.D.Mo.1982); *Carter v. Van Buskirk,* 16 B.R. 481, 483 (W.D.Mo.1981)("The stay...does not require actual notice to be effective. The filing of the petition operates as notice to the world.").

50.     Even where a creditor is unaware of a Debtor's bankruptcy case, its conduct in violation of the stay still constitutes a clear stay violation. *In re Talsma*, 468 B.R. 809 (N.D. Tex., 2012); and *See In re Cueva,* 371 F.3d 232, 236 (5th Cir.2004) (stating that actions in violation of the automatic stay are invalid, whether or not there is knowledge of the stay) (citing *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990); *In re Jackson,* 392 B.R. 666, 671 n. 11 (Bankr.S.D.Miss.2008)) (explaining that while knowledge of the bankruptcy is a relevant consideration as to the willfulness of a violation of the stay, it is not a relevant consideration as to whether the stay was violated). As it is, there is absolutely no question that BMY was fully aware—having been retained by court order—that Debtors were in bankruptcy. As to whether BMY knew about the automatic stay, in the first place, ignorance does not excuse a stay violation. *See, e.g., In re Smith,* 876 F.2d 524, 525–26 (6th Cir.1989); *In re Freemyer Indus. Pressure, Inc.,* 281 B.R. 262, 266–67 (Bankr.N.D.Tex.2002).

51.     Even where a creditor acts in violation of the stay having received no notice whatsoever, any act done in violation of the stay would be subject to being undone by order of the

Court. *In re Freemyer Indus. Pressure, Inc.,* 281 B.R. 262, 266–67 (Bankr.N.D.Tex.2002); *See In re Computer Communications,* 824 F.2d 725 (9th Cir.1987); *In re Stonegate Sec. Services, Ltd.,* 56 B.R. 1014 (N.D.Ill.1986)(a citation for contempt is appropriate for violations of the automatic stay); *In re Clark,* 60 B.R. 13, 14 (Bankr. N.D. Ohio 1986); *In re Miller,* 22 B.R. 479, (D.Md.1982); *In re Young,* 14 B.R. 809 (Bankr. N.D. Ill. 1981) (acts taken in violation of the automatic stay are void *ab initio,* regardless of whether the party so acting had notice of the filing of the bankruptcy petition). Collection by KGM of its prepetition claim violated Section 362(a)(1), (3) and (6) and so is subject to avoidance. *See also* 11 U.S.C. § 549(a).

52.     The automatic stay is considered as equivalent to a Court Order. See, *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976), <u>cert</u>. <u>denied</u>, 429 U.S. 1093, 97 S.Ct. 1107.

53.     In cases where the actions of the parties would plainly violate 11 U.S.C. §362(a) are taken in respect to State criminal proceedings, the Bankruptcy Courts, however, have struggled to reconcile 11 U.S.C. §362(a) with 11 U.S.C. §362(b) which provides that the automatic stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. §362(b)(1).

54.     Although Congress limited the power in § 362(b) providing, *inter alia,* exceptions for both criminal prosecutions, § 362(b)(1), and state enforcement of its police or regulatory powers, § 362(b)(4), Plaintiff has shown that the criminal prosecution herein by the Defendants is merely a subterfuge to allow this creditor to circumvent the automatic stay under 11 U.S.C. § 362(a). The policies underlying sections 362(a) and 362(b) may conflict and when the two provisions intersect, the court must determine whether criminal prosecution or police or regulatory

powers serve as a guise for debt collection. *In re First Texas Petroleum, Inc.*, 52 B.R. 322, 325 (Bankr. N.D. Tex. 1985).

55. There is no doubt that the filing of a petition in bankruptcy does not immunize a debtor from criminal prosecution. It is well established, however, that the Bankruptcy Court will not permit the State to use criminal prosecution for the sole purpose of collecting a debt dischargeable in bankruptcy, or to use law enforcement as a collection agency. *In re Redenbaugh,* 37 B.R. 383, 386 (Bankr. C.D. Ill. 1984).

56. Other Courts have also noted that the exception to the automatic stay for criminal actions or proceedings is not without limitation. It is well established that a creditor is not permitted to utilize a criminal prosecution as a means of avoiding the automatic and injunctive stay provisions of the Bankruptcy Code in an effort to continue to collect on a claim owed by the debtor. *In re Williamson-Blackmon*, 145 B.R. 18, 21 (Bankr. N.D. Ohio 1992); *In re Lake,* 11 B.R. 202, 204 (Bankr. S.D. Ohio 1981); *In re Caldwell*, 5 B.R. 740, 742 (Bankr.W.D.Va.1980).

57. Therefore, where the creditor initiated the criminal proceeding for the purpose of collecting a debt, the exception from the automatic stay pertaining to the commencement or continuation of a criminal action or proceeding against the debtors does not apply. *In re Emberton*, 263 B.R. 817 (Bankr. W.D. Ky. 2001); *In re Muncie*, 240 B.R. 725 (Bankr. S.D. Ohio 1999); *See also, In re Lake,* 11 B.R. 202, 204 (Bankr. S.D. Ohio 1981); *St. Joseph Wholesale Liquor Co. v. Butler (Matter of Butler),* 74 B.R. 106, 107 (W.D. Mo.1985); *Padgett v. Latham (In re Padgett),* 37 B.R. 280, 283-4 (Bankr. W.D. Ky.1983).

58. Some Courts have also struggled with the applicability of the strictures of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Matter of Taylor,* 44 B.R. 548

(D.C.1984) [the "principal motivation test" applied by the Bankruptcy Court in that case "does not supersede but must conform to the restrictions of *Younger*". 44 B.R. at 550.]

59.     However, once the issue in this proceeding is identified it is clear that the policies of *Younger* are not implicated here. When courts are dealing with the question of whether or not to enjoin a State court criminal proceeding pursuant to 11 U.S.C. §105(a) it is clear in this circuit that *Younger* is applicable. *In re Fussell*, 928 F.2d 712 (5th Cir. 1991) rehearing denied, certiorari denied 502 U.S. 1107, 112 S.Ct. 1203, 117 L.Ed.2d 443. However, in this case, Plaintiff is not here asking the Court to use merely its equitable powers to enjoin the Defendants; rather, Plaintiff is asking the Court to determine that the statutory provisions of § 362(a), by its own terms, enjoin the prosecution and if necessary, to enforce the statutory injunction with a specific judicial injunction. This Court received for filing a petition on January 25, 2017, which by statute enjoins certain proceedings. The injunction sought here is one to effectuate that stay and enforce that statute. *Younger* simply does not apply. *In re Brinkman*, 123 B.R. 318, 321 (Bankr. D. Minn. 1991).

60.     "[B]y virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay." *In re Dunbar*, 245 F.3d 1058 (9th Cir. 2001); *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir.2000) (en banc).

61.     In the alternative, even if *Younger* does apply, Plaintiff meets the *Younger* test as shown below.

62.     In order to secure these important protections, the Courts must display a certain rigor in reacting to violations of the automatic stay. See, *Kalb v. Feuerstein*, 308 U.S. 433,

438-39, 60 S.Ct. 343, 345-46 (1940).

63. The actions of Defendants with or without notice are each separate, willful violations of the provisions of 11 U.S.C. §362 for which the assessment of damages is mandatory under 11 U.S.C. §362(k).

64. Subsection (k) of 11 U.S.C. § 362 provides for the imposition of damages for a willful violation of the stay as follows: An individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

65. This section is not limited only to violators who had specific intent to violate the stay, but a violation of the stay can be considered willful when the creditor knew of the bankruptcy filing and violated the stay by an intentional act. *In re Sharon,* 234 B.R. 676, 687 (6th Cir. BAP 1999); *In re Emberton*, 263 B.R. 817 (Bankr. W.D. Ky. 2001).

66. Section 362(k) provides for a recovery of damages, costs, and attorney's fees by an individual damaged by a willful violation of the stay. 11 U.S.C. §362(h) has been held to create a private right of action for one damaged by a willful violation of the stay. *Pettitt v. Baker*, 876 F.2d 456 (5th Cir. 1989); *also see, Collier on Bankruptcy*, 15th Edition Revised, 362.11(3)(a).

67. It appears that assessment of damages under 11 U.S.C. §362 (h) is a core proceeding. See, *Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir. 1986).

68. A violation of the stay is punishable as contempt of court. *In re Skinner*, 917 F.2d 444 (10th Cir. 1990) (stay violations may be punished under 11 U.S.C. §362 (h), if applicable, or as a contempt under 11 U.S.C. §105).

69. Most Courts will impose contempt sanctions for a knowing and willful violation of

a Court Order. The automatic stay is considered as equivalent to a Court Order. See, *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107.

70.    A bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. §§ 105. The language of this provision is unambiguous. Reading it under its plain meaning, a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code. *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997).

71.    The value of the loss of a person's freedom and dignity are difficult to quantify. The Court can only attempt to quantify that loss with a monetary award. Substantial awards have been given in such cases; the award should be meant to compensate the Debtor for her incarceration along with the attendant extreme emotional distress caused her and should also be meant to serve as a deterrent to this type of overbearing activity by creditors. *In re Emberton*, 263 B.R. 817 (Bankr. W.D. Ky. 2001).

**EXCESSIVE FORCE USED AGAINST TAMMY DOBBS, 48 U.S.C. § 1983**

72.    Tammy Dobbs is suing Bates under Section 1983, a civil rights law passed by Congress that provides a remedy to a person who has been deprived of her federal constitutional rights under color of state law.

73.    Bates, an official of the State of Texas, Grayson County, acted under color of state law when he deprived her of her constitutional right under the Fourth Amendment of the United States Constitution to be free from excessive force while being arrested. *Graham v. Connor*, 490 U.S. 386 (1989). A law enforcement officer may only use the amount of force necessary under the

circumstances to make an arrest.

74.     Bates used excessive force against Tammy Dobbs when he arrested her. Bates aggressively yelled at Tammy Dobbs, threatened to take "everything [she] had," grabbed her phone from her and threw the phone to the concrete floor ground destroying the phone.  Then Bates threw Tammy Dobbs to the ground causing injuries to Tammy Dobbs' knew and shoulder. These acts violated Tammy Dobbs' Fourth Amendment right not to be subject to excessive force.

75.     Excessive force was not necessary to arrest Tammy Dobbs because:

     a.     The crime at issue for the arrest was non-violent;

     b.     Tammy Dobbs was not armed or resisting arrest;

     c.     The arrest occurred during the day;

     d.     No other persons were present with Tammy Dobbs whom Bates had to contend;

     e.     Bates was accompanied by at least 5 other law enforcement personnel during the arrest;

     f.     Tammy Dobbs was arrested at her home and made no attempts to evade arrest by flight;

     g.     The physical force applied to Tammy Dobbs was of such extent that it lead to unnecessary injury;

     h.     Tammy Dobbs is a 58 year-old female standing approximately 5'4" and weighing approximately 118 lbs;

     i.     Officer Bates is a mid-to-late thirties male approximately 6' tall, weighing at least 185 lbs.

76.     Bates' conduct directly caused Tammy Dobbs physical injury and emotional harm.

77.     The conduct and behavior of Bates was egregious and is the sort of conduct that is not covered by absolute or qualified immunity defenses.

**MALICIOUS PROSECUTION BY LANDMARK AND BATES, 48 U.S.C. § 1983**

78.     Tammy Dobbs alleges that Defendants Landmark Bank and Bates violated her Fourth Amendment rights by initiating the prosecution of Tammy Dobbs for the criminal offense of "Hindering a Secured Creditor" pursuant to Texas Penal Code § 32.33.

79.     Defendant Landmark Bank initiated the criminal proceeding without probable cause.

80.     The criminal proceeding ended in Tammy Dobbs favor. After the arrest occurred 18 months ago, Grayson County has failed to take any further actions against Tammy Dobbs, and upon information and belief, has no intention of ever prosecuting Tammy Dobbs for the criminal offense.

81.     Defendant acted maliciously or for a purpose other than bringing Tammy Dobbs to justice.

82.     As a consequence of the criminal proceeding, Tammy Dobbs has suffered a significant deprivation of liberty, physical injuries, and emotional distress.

WHEREFORE PREMISES CONSIDERED, Plaintiff Tammy Renea Dobbs prays for all relief in law and in equity to which she may show herself entitled including, but not limited to:

a.     Compensatory damages, for sanctions, including all reasonable attorney's fees, costs and for all punitive damages the Court may deem just against Defendants;

b.     Expungement of her arrest records for same, and a release of bonds in all criminal matters;

c.     Temporary and permanent injunctions against Landmark, its officers, directors, employees, agents and assigns enjoining it from testifying, participating, providing assistance, or in any other way continuing with the prosecution of Plaintiff in regard to the subject

matter of her arrest;

        d.      Temporary and permanent injunctions against Bates, enjoining him from testifying, participating, providing assistance, offering evidence or testimony or in any other way continuing with the prosecution of Plaintiff in regard to the subject matter of her arrest.

Dated: November 26, 2018.                          Respectfully submitted,

**NORRED LAW, PLLC**

/s/ Clayton L. Everett
Warren V. Norred
State Bar No. 24045094
Clayton L. Everett
State Bar No. 24065212
515 E. Border Street
Arlington, TX 76010
wnorred@norredlaw.com
O: 817-704-3984 / F: 817-524-6686
ATTORNEYS FOR TAMMY DOBBS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true copy of the above and foregoing "Plaintiff's Amended Complaint Against Landmark Bank, N.A., and Isaac Bates" was served on each party listed below, by personal delivery via Federal Express or Electronic Mail on November 26, 2018:

Landmark Bank, N.A.
c/o Wayne Cabaniss
2820 West FM Road 120
Denison, Texas 75020

Landmark Bank, N.A.
Jeffry Seckel or James Rea
McGuire, Craddock & Strother, P.C.
2501 N. Harwood, Suite 1800
Dallas, Texas 75201
jrea@mcslaw.com

William Riley Nix William
Riley Nix, P.C. 717 North
Crockett Street
Sherman, Texas 75090
riley_nix@yahoo.com

Isaac Bates
Grayson County Sheriff's Office
Grayson County Justice Center
200 S. Crockett
Sherman, Texas 75090

Honorable Tom Watt
Grayson County Sheriff
Grayson County Justice Center
200 S. Crockett
Sherman, Texas 75090

Honorable Joe Brown
Grayson County District Attorney
Grayson County Justice Center
District Attorney's Office
200 S. Crockett, Ste. 116A
Sherman, Texas 75090

James C. Tidwell
Wolfe, Tidwell &
McCoy, LLP
320 North Travis Street,
Suite 205
Sherman, Texas 75090

/s/ Clayton L. Everett _____